**SHRODE v. ROWOLDT.**

No. 15027.

United States Court of Appeals
Eighth Circuit.

June 17, 1954.

Alex Dim, Asst. U. S. Atty., St. Paul, Minn. (George E. MacKinnon, U. S. Atty., St. Paul, Minn., John M. McWhorter, Dist. Counsel, Immigration and Naturalization Service, Chicago, Ill., and Ben C. Marien, Atty., Immigration and Naturalization Service, St. Paul, Minn., were with him on the brief), for appellant.

Kenneth J. Enkel, Minneapolis, Minn. (Blanch Freedman and Gloria Agrin, New York City, were with him on the brief), for appellee.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This was an action brought by appellee to enjoin appellant from requiring him to post bond or bail, to release him from bail already posted and for a declaratory judgment declaring that the bail posted by him prior to the time of the entry of the final order of deportation expired and became of no force and effect from and after six months from the date of the entry of the final order of deportation against him. The parties will be referred to as they appeared in the trial court.

Plaintiff, an alien, was proceeded against by the immigration authorities on the ground that he had violated the immigration laws of the United States in that he had become after his entry into the United States a member of an organization which believed in, advised, advocated or taught the overthrow of the government by force, violence or other unconstitutional means in violation of 8 U.S.C.A. § 137.* Following the filing of this charge various proceedings were had and taken against him, including his arrest which was made November 26, 1948, following which he was released upon his own recognizance, but on March 18, 1952, because of certain amendments to the Immigration Act he was rearrested on a new charge that after his entry into the United States he had become a member of the Communist party and he was then for the first time required to give bond in the sum of four thousand dollars which was conditioned upon his appearance for proceedings relating to his deportation and if found to be unlawfully within the United States his delivery into the actual physical custody of an officer of the United States Immigration and Naturalization Service for deportation under warrant of deportation and acceptance of custody by such officer. Thereafter on hearing an order was made for his deportation which became final April 7, 1952. He was, however, not deported but on October 28, 1952, which was more than six months subsequent to the date the aforesaid deportation order became final, he was placed under supervisory parole, whereupon he demanded the bond theretofore posted by him be released, which demand was denied. The bond posted by him was executed by a compensated surety and to secure its execution he deposited with the surety cash collateral for the face amount of the bond and so long as the bond remains in full force and effect and uncancelled he is required to pay premiums to his surety and is unable to receive back from the surety the deposit made by him on the execution of the bond.

There were other proceedings had and taken in said matter while it was still

---

* Now Immigration and Nationality Act, §§ 101(e) (1), 212(a), 8 U.S.C.A. §§ 1101(e) (1), 1182(a).

pending before the immigration authorities but they are not deemed pertinent to any of the issues here presented.

The trial court entered findings of facts and conclusions of law in favor of plaintiff and by its judgment based thereon declared that plaintiff could not be required to post or to continue to post bond with the Immigration Service subsequent to the expiration of six months from the final order of deportation. The court also by its judgment ordered the release of the bond posted by plaintiff and the surety thereon and permanently restrained and enjoined defendant and his successors from requiring plaintiff to post bond with the said Service.

Defendant seeks reversal on the following grounds:

1. The bond from which the plaintiff seeks to be released was posted under statutory authority; and the court erred in ordering it released because six months had elapsed from the final order of deportation.

2. The bond posted by the surety on behalf of the plaintiff was not, by operation of law, automatically released and discharged at the time the order for supervised parole became effective; and the court erred in ordering defendant to release said bond.

3. Inasmuch as the plaintiff is not a party to the bond and is not required to be a party thereto he has no right to ask the court to require the defendant to cancel the bond, especially before all of its conditions have been complied with.

While plaintiff was placed under arrest in these deportation proceedings as early as November 26, 1948, he was not required to post bond until he was rearrested on the new charge filed against him on March 18, 1952. The bond was in fact posted April 4, 1952 and conditioned as above set forth. The Internal Security Act of 1950 was then in full force and effect. Section 156(a) and (b) of that Act so far as here pertinent provide as follows:

(a) "Pending final determination of the deportability of any alien taken into custody under warrant of the Attorney General, such alien may, in the discretion of the Attorney General (1) be continued in custody; or (2) be released under bond in the amount of not less than $500, with security approved by the Attorney General; or (3) be released on conditional parole. It shall be among the conditions of any such bond, or of the terms of release on parole, that the alien shall be produced, or will produce himself, when required to do so for the purpose of defending himself against the charge or charges under which he was taken into custody and any other charges which subsequently are lodged against him, and for deportation if an order for his deportation has been made."

(b) "Any alien, against whom an order of deportation, heretofore or hereafter issued, has been outstanding for more than six months shall, pending eventual deportation, be subject to supervision under regulations prescribed by the Attorney General. Such regulations shall require any alien subject to supervision (1) to appear from time to time at specified times or intervals before an officer of the Immigration and Naturalization Service for identification; (2) to submit, if necessary, to medical and psychiatric examination at the expense of the United States; (3) to give information under oath as to his nationality, circumstances, habits, associations, and activities, and such other information whether or not related to the foregoing as the Attorney General may deem fit and proper; and (4) to conform to such reasonable written restrictions on his conduct or activities as are prescribed by the Attorney General in his case." 8 U.S.C. § 156.

These provisions of the 1950 Act were carried forward with no material change and embodied in the 1952 Act.

It is observed that the Attorney General is given six months after the entry of an order of deportation within which to effect deportation and during that period plaintiff was properly required to post and keep posted his bond. At the end of the six months however, the alien

is subject to supervision and detention but there is no provision authorizing the continuance of bond. The question has recently been quite carefully considered by the District Court for the Southern District of New York in an opinion by Judge Murphy in United States ex rel. Lee Ah Youw v. Shaughnessy, D.C.S.D. N.Y., 102 F.Supp. 799, 800, where it is said:

"Prior to the adoption of the Internal Security Act of 1950, Section 20 of the Immigration Act of February 5, 1917, 39 Stat. 890, 8 U.S.C.A. § 156, made release of an alien taken into custody discretionary with the Attorney General under certain conditions 'pending the final disposal of the case'. The statute made no provision with respect to release or detention during the period between final disposal of his case and actual departure of the alien. The Internal Security Act in amending this section undertook to make such provision. Act of September 23, 1950, c. 1024, Title I, § 23, 64 Stat. 1010, 8 U.S.C.A. § 156(a). The amending statute divides the period between final determination and actual departure into two parts. The first part consists of six months during which the Attorney General is to effect departure. During this time the statute expressly makes discretionary with him the alien's detention, release on conditional parole, or upon bond. The second part begins six months after the order of deportation and provides that 'the alien shall become subject to such further supervision and detention pending eventual deportation as is authorized hereinafter in this section.' The problem presented by the instant case is that although the statute subjects the alien involved to 'supervision and detention * * * as is authorized hereinafter * * *', the statute thereinafter expressly provides only for 'supervision under regulations prescribed by the Attorney General.' And the regulations adopted by the Attorney General follow closely those which the statute requires him to make and cover only supervision of aliens so circumstanced. The only 'detention * * * authorized

hereinafter' consists of that necessarily involved in proceedings after arrest of an alien who has wilfully violated these statutory or administrative provisions for supervision, which violation is made felonious under the statute. 8 U.S.C.A. § 156(b), note 3 supra.

"So far then as Lee Ah Yang is concerned, since the expiration of six months from the final determination of his deportability on July 24, 1951, he has been subject lawfully only to supervision under these statutory and administrative provisions, and not to detention."

The trial court in the instant case in a well reasoned opinion expressed its views as follows [116 F.Supp. 143, 144]:

"It seems plain that the alternatives available to the Attorney General immediately upon the final determination that the alien is subject to deportation, which are detention, parole, or release upon bond, are made available only for the limited period of six months. 8 U.S.C.A. § 156, 1950 Act, 8 U.S.C.A. § 1252(c), 1952 Act. It appears that thereafter the Attorney General is limited in his control of the alien to the devices specified in 8 U.S.C.A. § 1252(d), and whatever additional requirements are provided for by the regulations to be issued by the Attorney General as contemplated by that section. The regulations which he has issued, Code of Federal Regulations, Title 8, § 150.6(f), substantially follow the language of the statute and make no provision either for detention, for release under bond, or for the continuance of bonds previously posted.

"Detention of the alien is not permitted beyond the six month period. Supervision is the remedy provided for by the Immigration Act, and the supervision as I see it is extremely drastic and controlling." U. S. ex rel. Rowoldt v. Shrode, D.C., 103 F.Supp. 752.

We are in accord with the views expressed by Judge Murphy in United States ex rel. Lee Ah Youw v. Shaughnessy, supra, and by Judge Joyce in the instant case. After six months from the entry of the order of deportation the Attorney General has only the

**814**

power of supervision. He may not detain, he may not imprison, and hence, it is illogical to hold that he may nevertheless require the posting of bail. When a party is required to post bail his sureties in effect become his jailers and the power to require bail connotes the power to imprison in the absence of such bail. United States ex rel. Heikkinen v. Gordon, 8 Cir., 190 F.2d 16.

It is earnestly argued by counsel for plaintiff that to require plaintiff to post and to keep posted a bond, as is attempted in the instant case, is equivalent to imprisonment and that if he can be required under the circumstances here disclosed indefinitely to furnish bond when he has not been convicted of any offense would be violative of his constitutional rights and that he would thereby be deprived of his liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. United States ex rel. Heikkinen v. Gordon, supra; United States ex rel. Mezei v. Shaughnessy, 2 Cir., 195 F.2d 964. In view of our conclusion already expressed on other issues we deem it unnecessary to give consideration to this contention.

■ It is finally urged by defendant that the plaintiff cannot maintain this action to cancel the bail bond which he had posted because he is not a party to the bond and is not required to be a party thereto. At the commencement of the trial of this action the parties stipulated in writing that there were no issues of fact involved in the case and that "the sole issue in this case is whether the bond filed in behalf of the plaintiff as set forth in the complaint has become released and inoperative for the reasons set forth in paragraphs XVIII and XIX of the complaint." The question now sought to be presented to this court was not presented to the trial court and that court has had no opportunity to pass upon it. We should therefore decline to consider it unless it can be said that it goes to the jurisdiction of the court and that is not urged here and, of course, was not presented to the trial court. Quite aside from this question however, we

think the contention wholly without merit. This action is not based upon the bond as a contract but is a suit in equity to enjoin defendant from its wrongful and unlawful refusal to release plaintiff from an obligation to continue under bond and for a declaratory judgment. The plaintiff was the real party in interest. So long as the bond remained uncancelled and the surety unreleased plaintiff was required to pay the premiums accruing from time to time and he could not, so long as the bond remained in effect, secure the return of the cash collateral in the face amount of the bond which he had posted. These were substantial interests clearly entitling him to maintain the action.

We have considered all the other contentions urged by the defendant for a reversal of the judgment but think them without merit.

The judgment appealed from is therefore affirmed.